# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# DIVISION

| | |
|---|---|
| PATRICK MULLINIX, <br> *Plaintiff* <br><br> v. <br><br> THIRTY-EIGHT STREET, INC., <br> ROGER BLOSS, AND BERNARD MOYLE, <br> *Defendants* | § § § § § § § § § Case No. 1:19-CV-067 LY |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

**TO: THE HONORABLE LEE YEAKEL
UNITED STATES DISTRICT JUDGE**

Before this Court are Defendants' Motion to Dismiss for Lack of Personal Jurisdiction and for Improper Venue, or, in the Alternative, to Transfer to the Southern District of Florida, filed on June 20, 2019 (Dkt. No. 13); Plaintiff's Motion to Compel Production, field on August 12, 2019 (Dkt. No. 24); Defendants' Motion to Quash Subpoena, filed on September 11, 2019 (Dkt. No. 34); and the related response and reply briefs.

The District Court has referred the above motions to the undersigned Magistrate Judge for Resolution and Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1), Federal Rule of Civil Procedure 72, and Rule 1 of Appendix C of the Local Rules of the United States District Court for the Western District of Texas ("Local Rules").

## I.  BACKGROUND

Defendant Thirty-Eight Street, Inc. ("TESI") is a Florida corporation that owns various companies in the hotel industry for the purpose of franchising. Vantage Hospitality Group, Inc. ("Vantage") is an affiliate of TESI that operated the branding aspect of the business with respect

to certain registered service marks. Prior to August 2016, Patrick Mullinix ("Plaintiff"), a resident of Travis County, Texas, served as Vantage's "Value Brand President," working on the Vantage brands and its associated hotel franchises. Defendants Bernard Moyle, a Florida resident, and Roger Bloss, a Nevada resident ("Individual Defendants"), were corporate officers of Vantage who worked with Plaintiff during the time period relevant to this lawsuit.

Red Lion Hotel Corporation ("RLHC") acquired Vantage in September 2016. Plaintiff alleges that as part of the acquisition agreement, the Individual Defendants would receive certain "earn-out bonuses" ($3 million and 276,000 shares of RLHC stock) in 2017 and 2018 if RLHC achieved certain business goals. Dkt. No. 1-1 at ¶13. On September 27, 2016, while at a conference in Phoenix, Arizona, Plaintiff alleges that he had had a meeting with the Individual Defendants during which he entered into an oral agreement (the "Agreement") "whereby Bloss and Moyle agreed that if the relevant Earn-Outs were achieved, they would pay Mullinix $125,000 on receipt of the 2017 Earn-Out, with all income taxes relating to such payment to be paid by Defendants, and $375,000 on receipt of the 2018 Earn-Out, again, with all related income taxes to be paid by Defendants." *Id.* at ¶ 15. Plaintiff alleges that the Individual Defendants later refused his request that "this agreement be reduced to writing." *Id.* at ¶ 16.

Plaintiff alleges that he turned down numerous other job opportunities and continued to work for RLHC "solely because of the promises made under the Agreement." *Id.* at ¶ 17. Plaintiff alleges that although the Earn-Out goals for both 2017 and 2018 were met, he received only a $125,000 payment for 2017, without compensation for tax liability, and nothing for 2018, in violation of the Agreement.

On December 21, 2018, Plaintiff filed this lawsuit in state court against TESI and the Individual Defendants (collectively, "Defendants") alleging breach of contract, promissory estoppel, fraud

and fraudulent inducement, and negligent misrepresentation. *See Mullinix v. Thirty-Eight Street, Inc.*, D-1-GN-18-007640 (353rd Dist. Ct. Travis County, Tex. Dec. 21, 2018). While Plaintiff does not allege that he made any agreement with TESI, he has included TESI as a defendant in this case because he asserts that the Individual Defendants were acting as agents for TESI.

On January 28, 2019, Defendants removed this case to federal court on the basis of diversity jurisdiction under 28 U.S.C. §1332. Defendants now have filed the instant Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(2), arguing that the Court does not have personal jurisdiction over the Individual Defendants because they did not purposefully direct their activities toward Texas. Alternatively, Defendants move to transfer venue to the Southern District of Florida pursuant to 28 U.S.C. § 1404(a). The Court will determine whether it has personal jurisdiction over the Defendants in this case.

## II. LEGAL STANDARDS

Federal Rule of Civil Procedure 12(b)(2) requires a court to dismiss a claim if the court does not have personal jurisdiction over the defendant. Fed. R. Civ. P. 12(b)(2). "If . . . the court rules on personal jurisdiction without conducting an evidentiary hearing, the plaintiff bears the burden of establishing only a *prima facie* case of personal jurisdiction." *Sangha v. Navig8 ShipManagement Private Ltd.*, 882 F.3d 96, 101 (5th Cir. 2018). "The district court is not obligated to consult only the assertions in the plaintiff's complaint in determining whether a prima facie case for jurisdiction has been made. Rather, the district court may consider the contents of the record at the time of the motion." *Id.* (internal quotations and citations omitted). "Although jurisdictional allegations must be accepted as true, such acceptance does not automatically mean that a prima facie case for [personal] jurisdiction has been presented." *Id.* The plaintiff must prove that the court has jurisdiction over the defendant with regard to each claim. *Seiferth v. Helicopteros Atuneros, Inc.,* 472 F.3d 266, 275 (5th Cir. 2006).

Federal Rule of Civil Procedure 12(b)(6) allows a party to move to dismiss an action for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the [nonmovant]." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotation marks omitted). While a complaint attacked by a Rule 12(b)(6) motion does not need detailed factual allegations in order to avoid dismissal, the plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The Supreme Court has explained that a court need not accept as true conclusory allegations or allegations stating a legal conclusion. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint must contain sufficient factual matter "to state a claim to relief that is plausible on its face." *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the [nonmovant] pleads factual content that allows the court to draw the reasonable inference that the [movant] is liable for the misconduct alleged." *Id.*

### III. ANALYSIS

**A. Personal Jurisdiction Principles**

A federal court sitting in diversity may exercise personal jurisdiction over a non-resident defendant if the state's long-arm statute permits an exercise of jurisdiction over that defendant and an exercise of jurisdiction would comport with the requirements of the Due Process Clause of the Fourteenth Amendment. *Sangha*, 882 F.3d at 101; *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009). Because the requirements of the Texas long-arm statute are coextensive with the requirements of the Due Process Clause, the sole inquiry is whether this court's exercise of personal jurisdiction over the Defendants would be consistent with due process. *Sangha*, 882 F.3d at 101. In order for personal jurisdiction to satisfy due process requirements, a plaintiff must show

that (1) the defendant purposefully availed himself of the benefits and protections of the forum state by establishing "minimum contacts" with the forum state, and (2) the exercise of personal jurisdiction over that defendant does not offend traditional notions of "fair play and substantial justice." *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945).

A defendant's "minimum contacts" may give rise to either specific or general personal jurisdiction, depending on the nature of the suit and the defendant's relationship to the forum state. *Sangha*, 882 F.3d at 101. Specific jurisdiction exists "when a nonresident defendant has purposefully directed its activities at the forum state and the litigation results from alleged injuries that arise out of or relate to those activities." *Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 243 (5th Cir. 2008) (internal quotation marks omitted). For minimum contacts to exist, "a defendant must have purposefully availed himself of the benefits and protections of the forum state such that he should reasonably anticipate being haled into court there." *Carmona v. Leo Ship Mgmt., Inc.*, 924 F.3d 190, 193 (5th Cir. 2019) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474-75 (1985) (internal citations omitted)). "That requirement is the 'constitutional touchstone' of personal jurisdiction. It 'ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person.'" *Id.* at 193-94. The plaintiff cannot supply "the only link between the defendant and the forum. Rather, jurisdiction is proper only where the defendant *himself* made deliberate contact with the forum." *Id.* at 194 (quotations omitted).

"A court may assert general jurisdiction over [non-resident defendants] to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Ops., S.A. v. Brown*, 564 U.S. 915, 919 (2011). Establishing general jurisdiction is "difficult" and requires "extensive

contacts between a defendant and a forum." *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008). Even repeated contacts with forum residents by a foreign defendant may not constitute the requisite substantial, continuous and systematic contacts required for a finding of general jurisdiction. *Id.* (quoting *Revell v. Lidov*, 317 F.3d 467, 471 (5th Cir. 2002)). "Random, fortuitous, or attenuated contacts are not sufficient to establish jurisdiction." *Id.* at 610 (quoting *Moncrief Oil Int'l Inc. v. OAO Gazprom*, 481 F.3d 309, 312 (5th Cir. 2007)).

## B. Does the Court Have Personal Jurisdiction over the Defendants?

In the instant case, Plaintiff is relying only on the doctrine of specific jurisdiction to support his argument that the Court has jurisdiction over the Defendants in this case.[1] The Fifth Circuit has articulated a three-step analysis for the specific jurisdiction inquiry:

> (1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there;
>
> (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and
>
> (3) whether the exercise of personal jurisdiction is fair and reasonable.

*Carmona*, 924 F.3d at 193 (internal citations omitted). If the plaintiff establishes the first two prongs, the burden then shifts to the defendant to make a "compelling case" that the assertion of jurisdiction is not fair or reasonable. *Id.* The plaintiff must prove that the court has jurisdiction over the defendant with regard to each claim. *Seiferth,* 472 F.3d at 275.

---

[1] Although TESI is also a named defendant in this case, the parties' briefs focus only on the activities of the Individual Defendants with regard to the issue of personal jurisdiction. Presumably, this is because Plaintiff alleges that it has sued TESI solely because the Individual Defendants were acting as agents for TESI. Accordingly, if the Court does not have jurisdiction over the Individual Defendants, it does not have jurisdiction over TESI.

Plaintiff argues that the Individual Defendants had minimum contacts with Texas because they each were actively involved in managing hotel franchises with multiple locations in Texas. Plaintiff also adds that Bloss visited Texas on multiple occasions to attend trade events and visit property locations. Thus, Plaintiff argues that the Individual Defendants purposefully directed their activities at Texas. However, as explained above, Plaintiff must also show that his causes of action arose out of or resulted from those contacts with Texas. *Carmona*, 924 F.3d at 197 ("For specific jurisdiction, [plaintiff's] claims still must stem from [defendant's] contacts with Texas."). Plaintiff has failed to make such a showing in this case. None of the above contacts with Texas had anything to do with the oral Agreement or Plaintiff's claims in this case. *See Inmar RX Sols., Inc. v. Devos, Ltd.,* 2019 WL 4440400, at *3 (5th Cir. Sept. 16, 2019) (finding that breach of contract claim did not arise out of or result from defendant's Texas-related contacts and therefore, "for this reason, the district court lacks jurisdiction over [defendant] as to such claim").

Plaintiff also argues that the Individual Defendants made misrepresentations to Plaintiff via emails and texts while Plaintiff was in Texas. As the Fifth Circuit has stated, "focusing on where a defendant allegedly directed a tort incorrectly emphasizes the relationship among the plaintiff, the forum, and the litigation, rather than among the defendant, the forum, and the litigation." *Renoir v. Hantman's Assocs., Inc.*, 230 F. App'x 357, 360 (5th Cir. 2007). Sending a Texas resident a few emails and texts related to a contract is not sufficient to establish the requisite minimum contacts to confer personal jurisdiction over the Individual Defendants here. *See Marathon Oil Co. v. A.G. Ruhrgas*, 182 F.3d 291, 295 (5th Cir. 1999) ("Its mere presence at the three meetings in Houston, together with the noted correspondence and phone calls, is not sufficient to establish the requisite minimum contacts because the record is devoid of evidence that Ruhrgas made false statements at the meetings or that the alleged tortious conduct was aimed at activities in Texas.").

7

In addition, Plaintiff alleges that the Court has personal jurisdiction over the Individual Defendants based on the specific claims alleged in the Petition. The Court next assesses whether each of the causes of action alleged by Plaintiff arise out of or result from the Individual Defendants' Texas-related contacts under the second step of the specific jurisdiction inquiry.

1. **Breach of contract and Promissory estoppel claims**

Plaintiff's Petition alleges that the Individual Defendants breached their oral agreement in this case and, in the alternative, failed to keep their promises. Plaintiff argues that this Court has personal jurisdiction over this claim because the Individual Defendants entered into a contract with a Texas resident, and that Plaintiff "resided in and performed his work from Texas at all relevant times." Dkt. No. 21 at p. 2. Plaintiff also alleges that the Individual Defendants breached their Agreement via email and phone communications with Plaintiff while he was in Texas.

In determining whether the court has personal jurisdiction over a non-resident defendant in a breach of contract case,[2] the Fifth Circuit has looked to factors such as the place of contracting, the place of performance, and the law governing the contract. *Jones v. Petty-Ray Geophysical Geosource, Inc.*, 954 F.2d 1061, 1069 (5th Cir. 1992). Plaintiff does not dispute that the parties negotiated and entered in to the alleged oral Agreement in Phoenix, Arizona, not Texas.[3] Thus, the circumstances surrounding the negotiation and formation of the Agreement indicate that the Individual Defendants did not purposefully direct their activities toward Texas. *See id.* Moreover, it is clearly established that "merely contracting with a resident of the forum state does not establish minimum contacts." *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999). "Jurisdiction must not be based on the fortuity of one party residing in the forum state." *McFadin*, 587 F.3d at 760.

---

[2] Courts analyze breach of contract and promissory estoppel claims under the same framework for determining personal jurisdiction. *See Moncrief*, 481 F.3d at 313.

[3] In fact, this was the only in-person meeting between the parties relating to the alleged Agreement at issue.

8

For the same reason, the Fifth Circuit has held that communications relating to the performance of a contract themselves are insufficient to establish minimum contacts. *See id.; see also Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 778 (5th Cir. 1986). Thus, the fact that the Individual Defendants emailed and texted Plaintiff while he was in Texas does not establish that Plaintiff's cause of action arises out of or results from the Individual Defendants' forum-related contacts.

Moreover, the oral Agreement in this case did not state where the Agreement would be performed or what state law would govern it. *See Moncrief*, 481 F.3d at 313 (finding that Texas was not the hub of the parties' activities because the contract was silent as to location, and based on the nature of the work, there was no indication that the location of performance mattered). While Plaintiff contends that he "performed his work from Texas at all relevant times," Dkt. No. 21 at p. 2, Plaintiff's unilateral activity in Texas cannot satisfy the requirement of contact between the Defendants and the state of Texas. *See Hanson v. Denckla*, 357 U.S. 235, 253 (1958) ("The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State."); *Barnstone v. Congregation Am Echad*, 574 F.2d 286, 289 (5th Cir. 1978) (relying on *Hanson* to find no jurisdiction and noting that, at best, plaintiff's activity in Texas "would appear to constitute unilateral partial performance").

Based on the foregoing, the Court finds that there are insufficient contacts to establish personal jurisdiction over the Individual Defendants with respect to Plaintiff's breach of contract and promissory estoppel claims. *See Moncrief*, 481 F.3d at 313 (finding that "mere fortuity that one company happens to be a Texas resident, coupled with that company's unilateral performance, is not enough to confer jurisdiction"); *Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327, 344 (5th Cir. 2004).

## 2. Tort-based claims

In addition to his breach of contract and promissory estoppel claims, Plaintiff also alleges negligent misrepresentation and fraud claims against the Individual Defendants. The Court finds that Plaintiff has failed to demonstrate the Court has jurisdiction over the Individual Defendants with respect to these tort-based claims.

Generally, "the defendant's commission of a tort while physically present in the state will readily confer specific jurisdiction." *Carmona*, 924 F.3d at 194; *see also Guidry v. United States Tobacco Co.*, 188 F.3d 619, 628 (5th Cir. 1999) ("When a nonresident defendant commits a tort within the state . . . that tortious conduct amounts to sufficient minimum contacts with the state by the defendant to constitutionally permit courts within that state, including federal courts, to exercise personal adjudicative jurisdiction over the tortfeasor . . . ."). Thus, Plaintiff is correct that the Court would have personal jurisdiction over the Individual Defendants if they committed a tort while in Texas. The problem for Plaintiff is that he has failed to allege that the Individual Defendants made any false representations to Plaintiff while they were physically present in Texas. As noted, the parties entered into the alleged oral Agreement in Arizona, not Texas.

In addition, Plaintiff also failed to allege plausible tort-based claims against the Individual Defendants. The Court addresses the viability of each of Plaintiff's tort claims in turn.

### a. Negligent misrepresentation claim

Under Texas law, the elements of negligent misrepresentation are: (1) the representation is made by a defendant in the course of his business, or in a transaction in which he has a pecuniary interest; (2) the defendant supplies "false information" for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffers pecuniary loss by justifiably relying on the

representation. *Matter of Life Partners Holdings, Inc.*, 926 F.3d 103, 123 (5th Cir. 2019) (quoting *Fed. Land Bank Ass'n of Tyler v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1991)).

Plaintiff alleges that the Individual Defendants made false representations that they would pay him "$125,000 on receipt of the 2017 Earn-Out and $375,000 on receipt of the 2018 Earn-Out, and they would compensate him for the tax liabilities associated with each payment." Dkt. 1-1 at ¶¶ 36 and 38. These allegations cannot support a claim for negligent misrepresentation because they was not a misstatement of an existing fact. "A claim for negligent misrepresentation under Texas law contemplates that the 'false information' provided by the defendant is a misstatement of existing fact." *Clardy Mfg. Co. v. Marine Midland Bus. Loans Inc.*, 88 F.3d 347, 357 (5th Cir. 1996) (internal citations omitted); *see also Moncrief*, 481 F.3d at 314 ("We have . . . clarified that a negligent misrepresentation claim must allege a misstatement of an 'existing fact,' not the "*future* behavior of [defendant].""). The misrepresentation alleged by Plaintiff concerned the future behavior of the Individual Defendants – that they would compensate Plaintiff on receipt of the certain Earn-Outs in 2017 and 2018. *See Moncrief*, 481 F.3d at 314 (holding that the alleged misrepresentation claim was not actionable because it concerned the *future* behavior of the defendant – that he would continue to honor the agreements – rather than an "existing fact"); *Sergeant Oil & Gas Co. v. Nat'l Maint. & Repair, Inc.*, 861 F. Supp. 1351, 1360 (S.D. Tex. 1994) (holding that defendant's representation that a barge could be loaded in eighteen to twenty-four hours was not actionable under a theory of negligent misrepresentation). Accordingly, Plaintiff's negligent misrepresentation fails to state a plausible claim for relief.

### b. Fraud and fraudulent inducement claims

Plaintiff alleges that the Individual Defendants committed fraud when they made false representations with regard to how much they would compensate Plaintiff in order to induce

Plaintiff to keep working for them. Plaintiff alleges that the Individual Defendants committed this fraud at the meeting in Arizona and later in emails and texts to Plaintiff.

To recover for fraud or intentional misrepresentation in Texas, a plaintiff must prove: "(1) that a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of its truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation, and (6) the party thereby suffered injury." *Lane v. Halliburton*, 529 F.3d 548, 564 (5th Cir. 2008) (quoting *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 758 (Tex. 2001)).

First, the "mere failure to perform contractual obligations as promised does not constitute fraud but is instead a breach of contract." *Kevin M. Ehringer Enters., Inc. v. McData Servs. Corp.*, 646 F.3d 321, 325 (5th Cir. 2011); *see also Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 48 (Tex. 1998) ("[T]he mere failure to perform a contract is not evidence of fraud."); *Leonard v. USA Petroleum Corp.*, 829 F. Supp. 882, 890 (S.D. Tex. 1993) ("Personal jurisdiction over a foreign defendant is improper when it is based on tort claims arising from a contract dispute."). For a promise of future performance to be the basis of actionable fraud, it must have been false at the time it was made. A claim can be based on a promise of future performance only "if the promise was made with no intention of performing at the time it was made." *Formosa*, 960 S.W.2d at 48; *see also Spoljaric v. Percival Tours, Inc.*, 708 S.W.2d 432, 435 (Tex.1986) ("Failure to perform, standing alone, is no evidence of the promisor's intent not to perform when the promise was made.").

While Plaintiff alleges that the Individual Defendants promised to pay Plaintiff certain compensation in 2017 and 2018 and failed to keep that promise, Plaintiff does not allege that the

Individual Defendants had no intention of paying Plaintiff at the time those promises were made. *See Schindler v. Austwell Farmers Co-op.*, 841 S.W.2d 853, 854 (Tex. 1992) (denying fraud claims where there "is no evidence that Schindler had no intention of paying for what he bought at the time he promised he would pay"). Accordingly, Plaintiff's allegation of fraud fails because it does not allege that the Individual Defendants made the promises knowing that they were false, and with no intention of paying Plaintiff.

Plaintiffs' tort-based claims do not state a plausible claim for relief and cannot give rise to jurisdiction in this case. *See Moncrief*, 481 F.3d at 314.

## C. Conclusion

Based on the foregoing, the Court does not have personal jurisdiction over the Defendants in this case and the case should be dismissed pursuant to Rule 12(b)(2).[4] Because the Court is recommending that the case be dismissed for lack of jurisdiction, all pending discovery motions in this case (currently Dkt. Nos. 24 and 34) should be dismissed as moot.

## IV. RECOMMENDATION

Based on the foregoing, the undersigned **RECOMMENDS** that the District Court **GRANT** Defendants' Motion to Dismiss for Lack of Personal Jurisdiction (Dkt. No. 13) and **DISMISS** this lawsuit under Federal Rule of Civil Procedure 12(b)(2).

The undersigned **FURTHER RECOMMENDS** that the District Court **DISMISS** all pending discovery motions in this case as **MOOT**.

---

[4] Because the Court finds that the case should be dismissed, it need not reach Defendants' alternative argument that the case should be transferred to the Southern District of Florida pursuant to 28 U.S.C. § 1404(a).

## V.  WARNINGS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

**SIGNED** on September 20, 2019.

_____
SUSAN HIGHTOWER
UNITED STATES MAGISTRATE JUDGE